ROSE MARIE BELOTE, By Next Friend, and MRS. JOSEPH A. PARKER, Plaintiffs-in-Error, v. MEMPHIS DEVELOPMENT COMPANY, FOGELMAN & COMPANY, and STANLEY P. ROGERS, Defendants-in-Error.—369 S. W. (2d) 97.

Western Section, Jackson. December 17, 1962.

Certiorari Denied by Supreme Court June 4, 1963.

424

Aspero & Aspero, Anthony A. Aspero, Memphis, of counsel, for plaintiffs in error.

Leo Bearman and Leo Bearman Jr., Memphis, for Memphis Development Co.

McDonald, Kuhn, McDonald, Crenshaw & Smith, Memphis, for Fogelman & Co. and Stanley P. Rogers; Edward W. Kuhn, Memphis, of counsel.

AVERY, (P. J. W. S.). This is the second time this case has been in this Court. It was carried from this Court by petition for certiorari granted by the Supreme Court of the State of Tennessee, which by an opinion prepared for it by Justice Burnett reversed this Court, and published the opinion of that Court in 208 Tenn. 434, 346 S. W. (2d) 441, whereby the case was ordered remanded to the Circuit Court of Shelby County for a new trial.

It was again tried in the Circuit Court of Shelby County to the Court, Honorable John W. Wilson, Judge, and a jury, when the Court directed a verdict at the conclusion of plaintiffs' proof against the plaintiffs-in-error and in favor of Fogelman & Company and Stanley P. Rogers. Trial was concluded and at the end there was a jury verdict in favor of said Memphis Development Company. That verdict was approved and after the filing of the motion for new trial, same being overruled, an appeal in error was granted, perfected to this Court where the

case was heard on the 26th day of September, 1962, and is now being disposed of by this opinion.

This suit grows out of an alleged injury to Rose Marie Belote, a minor, who sues by next friend, Mrs. Joseph A. Parker, her mother, and also by Mrs. Parker for the expenses paid by her incident to the treatment on account of the alleged injuries to her daughter.

In this opinion where both of the plaintiffs are referred to as such, it will be by the designation or status which they had in the lower Court, that is "plaintiffs", and where they are referred to individually it will be by name. The defendants will be referred to, when as a group, by the word "Defendants" and when referred to in their respective individual capacity, by their name.

When this case was first tried in the Circuit Court of Shelby County there was a directed verdict for all defendants, and on appeal in error to this Court the judgment on that verdict was affirmed, and as stated above, the Supreme Court granted certiorari, heard the case, reversed both Courts and ordered a new trial.

The facts undergirding this suit are succinctly set forth in the opinion of the Supreme Court beginning on page 441, 346 S. W. (2d) and are in practical and legal effect the same as now appears in the record under consideration. They are as follows:

"In April, 1958, Mr. and Mrs. Joseph A. Parker contracted to purchase a house and lot in Shelby County for $13,000 on which they paid $500 down as earnest money and agreed to make application for an F.H.A. loan for $12,000 through a local banking house in Memphis. The agreement provided that if

the purchaser could not qualify for the F.H.A. loan then his earnest money should be refunded to him.

"Mr. and Mrs. Parker desired to move into this property prior to the approval of this loan, they having sold their home that they then lived in, and the Development Company agreed to their moving into this property prior to the closing of the loan and delivery of the deed upon a condition that Mr. and Mrs. Parker sign a letter, which was dated May 29, 1958, and on which date they moved into the property, providing among other things that: 'We fully understand that we are not occupying this house as tenants but as purchasers under contract.' Two days after moving into this house to-wit, on May 31, 1958, while the daughter of Mrs. Parker and the stepdaughter of Mr. Parker, Miss Belote, was taking summer things to the attic of the house for storing she fell from the attic of this newly constructed residence through an opening left for an attic fan down some nine feet to the floor below and thus received injuries for which this suit was brought."

When this case was in the Supreme Court, the Supreme Court in extending the right of action in such cases, adopted the rule laid down in Section 353, pp. 961 and 962 of the Re-statement of the Law of Torts. It is as follows:

" 'A vendor of land, who conceals or fails to disclose to his vendee any condition whether natural or artificial involving unreasonable risk to the person upon the land, is subject to liability for bodily harm caused thereby to the vendee and others upon the

land with the consent of the vendee or his sub-vendee, after the vendee has taken possession, if

" '(a) the vendee does not know of the condition or risk involved therein, and

" '(b) the vendor knows of the condition and the risk involved therein and has reason to believe that the vendee will not discover the condition or realize the risk'."

This was apparently an adaptation of an exception to the rule enunciated in Smith v. Tucker, 151 Tenn. 347, 270 S. W. 66, 41 A.L.R. 830. Whether it can be said to be an exception or not, the Supreme Court, after reviewing some of the Tennessee cases such as Wilcox v. Hines, 100 Tenn. 538, 549, 46 S. W. 297, 299, 41 L.R.A. 278, 66 Am. St. Rep. 770, said:

"In other words, the principle under which this exception is based is not upon any relationship whatsoever, whether vendor and vendee, landlord and tenant or whatnot, but on the rights and duties of man to man."

Also in that opinion the Supreme Court adopted the further statement contained on page 963 of the Restatement of the Law of Torts, saying among other things:

"A vendor, therefore, is not required to exercise care to disclose dangerous conditions or to have an ordinarily retentive memory as to their existence, unless the condition is one which such an inspection by the vendee would not discover or, although the condition would be so discovered, the vendor realizes the risk involved therein and has reason to believe

that his vendee will not realize it. On the other hand, if the vendor actively conceals the condition, by painting it over or otherwise, or deliberately states that the land is in safe condition when he knows it to be dangerous or deliberately fails to disclose a condition which the vendor believes that the vendee neither knows nor will discover, although an inspection would disclose it, he is not entitled to assume that the vendee will discover it before throwing the land open to others.''

After that quotation our Supreme Court then said: ''When a vendor does these things clearly he should be liable.''

The assignments of error are levelled first at the charge of the Court to the jury as follows:

''Now jurors, in this state it is generally the rule of law as between vendor, that is the person selling real estate, and the vendee, that is the person purchasing real estate, that once the vendee has taken possession of the property, the vendor of the real estate is not subject to liability for bodily harm caused to the vendee or to others while upon the premises by reason of any dangerous condition, whether natural or artificial, at the time the vendee took possession. In other words, the doctrine of caveat emptor, that is let the purchaser beware, applies to any proposed liability after a vendee purchases real property from a vendor.

''However, gentlemen, as to this general rule I have first stated to you, our courts recognize an exception, which exception is that the vendor is liable in his failure to disclose a dangerous condition known to

him, where he should have realized that the vendee did not know, and probably would not discover the condition and its potentiality for harm, or the exception may be stated in this fashion.

"A vendor of land, who conceals or fails to disclose to his vendee any condition whether natural or artificial involving unreasonable risk to the person upon the land, is subject to liability for bodily harm caused thereby to the vendee and others upon the land with the consent of the vendee or his sub-vendee, after the vendee has taken possession, if:

"(1) The vendee does not know of the risk involved therein, and,

"(2) The vendor knows of the condition and the risk involved therein, and has reason to believe that the vendee will not discover the condition or realize the risk."

It is then said:

"This was error because there was no reason for the Court to have charged the jury as to the general rule of law and the doctrine of caveat emptor when only the exception to this rule was applicable to the case at bar. The Court should have charged the jury only with respect to the exception to said general rule * * *"

Further that the relationship was not the basis and had nothing to do with the case at bar; that it hopelessly misled and confused the jury; that the jury came for further instructions and the Court again charged the doctrine of vendor and vendee, compounding the error alleged; that the attitude of the jury and its quandary

over the charge are shown by affidavits of jurors James F. Powers and George Roe.

Recurring now to the general charge the only mistake that counsel has made in quoting the charge which is alleged to be error is that he incorporated the word "first" in the second line of the second paragraph, when as a matter of fact that word had been stricken by the Court and the word "just" so as to make that statement read: "However, gentlemen, as to this general rule I have just stated to you, our courts recognize an exception * * *"

Recurring to the charge of the Court as shown by the record, after the Court had quoted the exact language used in the opinion of the Supreme Court in this case, shown on page 442 of 346 S. W. (2d) the Court further said:

"And Gentlemen of the Jury, I charge you that after Mr. and Mrs. Parker took possession of the property that the members of their family or any other person upon the property with the consent of Mr. and Mrs. Parker had knowledge of, or could have had knowledge of, in the exercise of reasonable and ordinary care, that is such care as a reasonably and ordinarily prudent person would have exercised under all the surrounding circumstances.

* * * * * *

"And as I have said the burden is upon the plaintiffs of establishing and making out their case by the greater weight and preponderance of the evidence.

"So a question of fact is presented for you gentlemen to say whether or not at the time Mr. and Mrs.

Parker occupied the premises a dangerous condition existed as to the attic fan opening of which the defendants knew, and that the defendant should have realized that Mr. and Mrs. Parker did not know of the dangerous condition and probably would not discover the dangerous condition, or its potentiality for harm, in the exercise of reasonable, and ordinary care.

"If you find from a preponderance of the evidence that such a condition as I have just stated to you did exist at the time Mr. and Mrs. Parker occupied the house then you should find for the plaintiffs."

The foregoing quote is the gravamen of the socalled exception to the general rule announced in this case.

We have carefully read the entire charge of the Court, and now passing to assignment of error No. II, in further explanation, which is to the effect that the Court erred in failing to instruct the jury as provided in the quote of that opinion on 346 S. W. (2d) p. 443, which quotation is that from page 963 of the Re-statement of the Law of Torts, and which is not necessary here to quote. It is said that this is error for the reason that on the basis of the issues and the proof it was manifestly necessary to charge the jury in that language, and that the failure to so charge, coupled with the charge of the applicability of caveat emptor rule applying to any liability of vendor after vendee purchases real property, is tantamount to instructing the jury to return a verdict for the defendant. We think the chage can not be so construed.

Passing now for a moment's discussion to assignment of error No. III, wherein it is said "The trial Court erred

when it neglected, failed and refused to give plaintiff's requested instructions as follows:

(a) "REQUESTED INSTRUCTION NO. I The plaintiff in this case has the burden of establishing by the preponderance of the evidence that the defendant knew about the defective condition in the attic. This burden can be satisfied by indirect or circumstantial evidence; that is, evidence from which knowledge of the defective condition can be inferred or presumed. If you find from the preponderance of the evidence that there was a defective condition in the attic at 900 Gower Street and if you further find that the defendant, Memphis Development Co., built or created this defective condition then you can presume or infer that the Memphis Development Co. had knowledge of this defective condition. . . .

(b) "REQUESTED INSTRUCTION NO. 2 It must be presumed that the builders of the house at 900 Gower street had knowledge of the defective condition in the attic, if any, because the house was built by their workmen. (Belote vs. Memphis Development Co., 208 Tenn. 434; 346 S. W. (2d) 441, page 444.)

(c) "REQUESTED INSTRUCTION NO. 3 If you find that there was a defective condition in the attic of the house at 900 Gower and if you further find that the Memphis Development Co. built or created this defective condition, then it must be presumed that the Memphis Development Co. had knowledge of this defective condition in the absence of any contrary evidence. (Belote vs. Memphis Development Co., 208 Tenn. 434; 346 S. W. (2d) 441, page 444.)

(d) "REQUESTED INSTRUCTION NO. 4 The defendant, Memphis Development Co., a corporation, is chargeable with knowledge of any dangerous condition on the premises known as 900 Gower Street where knowledge of the dangerous condition is acquired by its employee while acting within the scope of his employment. Southern Bell Telephone [& Tel. Co.] vs. Yates 34 Tenn. App. 98 [232 S. W. (2d) 796]."

Now in disposing of the first three assignments of error we conclude they must be overruled. We think the Court charged the law, as we understand it, as held by the Supreme Court as set out in its opinion in this case, which has certainly become the law of the case, when it was heretofore before that Court.

■ Respecting assignment No. I we think the Court was eminently correct, and that the exception is one to the doctrine of caveat emptor in such cases, the meaning of which the Court explained, as it relates to vendors and their duties and liabilities to vendees springing from injuries caused by defects in a building or other real estate, for it is very clear from the opinion that the doctrine of caveat emptor still applies if this defect is a patent defect which the purchaser can see and does see from a casual inspection of the property such as an ordinary prudent person usually makes, and when the Court had explained this and then told the jurors the legal effect of the exception to the rule, and what their duty was with respect to the proof in connection with the issues here involved, we think he was clearly correct.

■ In assignment No. II the charge of the Court, in his explanation and in his quotation of what the Court

had held with respect to that said exception, when it adopted the rule set out in Re-statement of the Law of Torts, there was no necessity to go further and quote that part of the opinion which is complained of in assignment II. Had he done so, it would have been more favorable to defendants than to the plaintiff, and the plaintiff, therefore, is precluded from relying thereon, even if such were error, which we think it is not.

Passing to assignment No. III, neither of these requested charges states the law of the case completely, particularly in connection with the exception to the general rule, and a careful reading of all four of them together, had the Court seen fit to charge them all, they would not constitute together a complete statement of the law, for the reason that the whole theory of the defense in this case was that there was no dangerous condition in the structure. Thus when the Court charged the jury as shown in our quote above, where he begins with the statement, "So a question of fact is presented for you gentlemen", he gave the jury the law of the exception to the general rule, and then as shown in said quote in all fairness to plaintiffs, he said:

"If you find from a preponderance of the evidence that such a condition as I have just stated to you did exist at the time Mr. and Mrs. Parker occupied the house, then you should find for the plaintiffs."

So it is that we are of the opinion that the charge of the Court, taken as a whole, is clear and easily understandable, and that there was no reason for the jury to misunderstand it.

It is said that the misunderstanding was compounded by what was said when the jurors came back

and asked some question of the Court the next morning after he had let them go home the night before, when he again read that portion of his charge dealing with vendor and vendee and their responsibility, and again quoted exactly what the Supreme Court had said was the exception when this case was before it. He made no further comment than to read exactly what was in the general charge, and this occurred because, immediately after the charge had been delivered the afternoon before, it was fairly close to the time for the adjournment of Court, and the jury had requested the Court to let them go home, which he did, and the next morning when they came back the question was asked and the Court again simply read what he had said the day before. So that all three of these assignments, I, II and III will be overruled.

Assignment of error No. IV is levelled at the action of the Court in sustaining the motions for directed verdict for the defendants Fogelman & Company and Stanley P. Rogers.

■ The record shows clearly that Fogelman & Company is a duly licensed real estate firm in Memphis and that the defendant, Stanley Rogers, was a licensed real estate agent employed by Fogelman & Company; that neither Fogelman & Company nor Rogers had anything to do with the construction of the involved building, they were simply real estate agents with whom it had been listed for sale, they were not vendors, builder, nor otherwise connected with the Memphis Development Company which had the properties built. The proof at the end of plaintiffs' proof in chief clearly showed, and the Court would have been acting without proof had he not sustained the motion for directed verdict as to

them. Not only is that true, but sustaining the motion for directed verdict as to them could not have had anything to do with the liability of the developer, Memphis Development Company, the builder and the vendor.

We must not overlook the fact that when the Supreme Court had this particular case before it, having gone to that Court by granted petition for certiorari from this Section of this Court on opinion prepared by Judge Carney, that in this Court at that time and so in the Supreme Court, the only proof was that of the plaintiffs, there having been a directed verdict at the end of plaintiffs' proof in favor of all of the defendants upon motion seasonably made. So it is that while the facts stated in the opinion are succinctly corrected with respect to what the plaintiffs had testified to, now the record has in it the evidence of the defendants and that evidence was heard by the trial court and the jury, and there are sharp conflicts in what is said by the witnesses for defendants and the witnesses for plaintiffs. Thus there is a verdict insofar as the Memphis Development Company is concerned based upon these issues, and it goes without saying that if there is any convincing, substantial and competent proof to justify the verdict of the jury, and no error otherwise, we must affirm as to Memphis Development Company.

This has been said so many times that it is unnecessary to say it again, but reference is made to the case of our opinion in Spence v. Carne, 40 Tenn. App. 580, 292 S. W. (2d) 438, and the other citations found in the first column of said opinion on page 443, beginning with the citation "D. M. Rose & Co. v. Snyder, 185 Tenn. 499, 206 S. W. (2d) 897", and others.

■ It further goes without saying that since these real estate concerns, Fogelman & Company and Rogers were simply the medium of contact between the vendor and the vendee, that unless their principal could be held, certainly they could not be held on any ground whatever, however, for the reasons hereinbefore stated the Court properly directed a verdict for them.

The questions involved, which must be settled by this Court, and were settled by the Court below from which the appeal is taken, are as follows:

1—Did the Memphis Development Company build the involved dwelling and leave the attic fan opening in an unsafe and unguarded condition involving unreasonable risk to a person upon the property?

2—Did the vendee know of the condition or risk involved in respect to the opening for installation later of an attic fan?

3—Did the vendor know of such faulty condition of the attic fan opening and have any reason to believe that the vendee would not discover the condition or realize the risk of such condition?

The declaration and the pleas put squarely at issue these three involved questions in accord with the opinion of the Supreme Court when the case was before it as shown by the opinion of that Court hereinbefore referred to and from which there are quotations.

The verdict of the jury was written, signed by the foreman, W. T. Higgins and is that, "We, the Jury find for the Defendant". When the verdict was returned in open Court counsel for plaintiff requested that the jury be polled, thereupon the Court called the role of the

jury by each individual name and inquired if the verdict endorsed upon the jacket, as quoted above, was his verdict and each juror answered "Yes".

The construction immediately below and above the attic fan opening as done by the carpenters when the building was finished and the plaintiffs moved in, was explained in the testimony of one of them and explained to the jury, who was called as a witness by plaintiffs.

There is now no question on the relationship of the parties whatever, nor that the child hurt was a member of the family. The whole question revolves around the exception to the particular and general rule relating to vendor and vendee, and the rights of the vendee after taking possession of the property, all as determined originally in Smith v. Tucker, 151 Tenn. 347, 270 S. W. 66, 41 A.L.R. 830.

Assignment of error No. V is somewhat vague and will only be given but little consideration. It simply alleges that the Court erred in failing to charge the jury with reference to all material issues of fact which the jury was called upon to determine, as well as all theories of the respective parties, accurately and fully, and then in that assignment it is alleged that Stanley Rogers, in the presence of plaintiff, Mrs. Parker and her husband, assured them that the attic was floored and a safe place to walk on etc., and is said:

"The defendant, Stanley Rogers, by his aforesaid statements and conduct, did actively prevent and preclude an inspection by plaintiffs of the attic where, at that moment, the opening was covered with non-weight bearing material."

That is nothing short of saying that defendant, Memphis Development Company was liable for the acts of Stanley Rogers as to inspection of this real estate in that his action prevented "and preclude an inspection by plaintiffs". If we understand the declaration it in no wise charges that the defendant, Memphis Development Company's liability was based upon the activities or statement of Rogers, and even if it did and the Court had failed to incorporate that in his charge as a theory, it does not appear that the plaintiffs filed any special requests based upon any such theory. A careful reading of what the plaintiffs have said themselves, when the whole evidence, both on direct and cross examination, is considered even without the testimony of Rogers himself, which is in the record, supports the contention that no such guarantees were made to the plaintiffs by Rogers which could be substantive or convincing evidence binding Memphis Development Company. In addition the proof of the plaintiff admits that Rogers pulled down the concealed stairway, invited them to go up and look at the attic and that Mr. Parker did go up the stairway and look around in the attic, standing with a part of his body up in the attic, with the baby in his arms. Certainly as a matter of law and fact both, the assignment will have to be overruled under authority of McClard v. Reid, 190 Tenn. 337, 229 S. W. (2d) 505, and many other cases that could be referred to.

Assignment of error VI is levelled at the action of the Court in excluding evidence relative to alleged additional injuries occurring to the minor plaintiff, Rose Marie Belote almost a year after she had fallen through this attic. It is said that this was error because this child had sustained head injuries at the time she fell

through the attic which brought on fainting spells, and that due to one of these conditions she fell at a skating rink and broke her wrist. It is said that an issue of fact of whether or not this fall was result of an injury received at the time it is alleged she fell through the attic, was a question to be determined by the jury.

The verdict of the jury is a general verdict. This attempt was obviously an effort to evade the opinion of the Supreme Court in Coleman v. Byrnes, 34 Tenn. App. 680, 242 S. W. (2d) 85, (1950) to the effect that in order to find one guilty of proximate cause of an injury, the negligence must be predominate and efficient result of the negligent act. Furthermore, a rather clear case on the point is that of Ashworth v. Carnation Co., 190 Tenn. 274, 229 S. W. (2d) 337, an opinion of the Supreme Court in 1949. The evidence proffered was to the effect that she fell at a skating rink because she had had some pills from Dr. McCall that made her ''dizzy and woozy and she passed out at the place where she was skating.''

 Finally, it could not be said that even if the exclusion of this evidence was error it affected the verdict of the jury for the reason that as it related to the fall the jury returned a verdict of not guilty favorable to the defendant and certainly under the provisions of Sections 27-116, 27-117, T.C.A. this Court could not find affirmatively that if the exclusion of this evidence were error, it was such an error as affected the verdict of the jury.

 Assignment of error No. VII is levelled at the action of the Court in excluding a photograph which was found in the record and offered as Exhibit No. 16. This showed a picture with the covering of the ceiling joists above this attic fan opening, completely nailed to

these ceiling joists covering the entire opening. Obviously it is an admitted fact that all the boards were not over the opening at the time this person fell, and it is alleged that there was sheetrock and things of that kind at that point, which this picture did not show. Again, not only did the picture fail to show the condition as it was at the time the accident occurred and therefore, is incompetent, but if it could be, by any stretch of imagination, held competent, the Court's action in that respect would fall in the same category as assignment of error No. VI because the jury returned a verdict of not guilty and certainly we could not affirmatively find such action affected the verdict of the jury. In addition many of our Supreme Court decisions have held that the admission of photographs is a discretionary matter for the trial court and unless that discretion is abused it could not be a reversible error. Monday v. Millsaps, 37 Tenn. App. 371, 264 S. W. (2d) 6; Strickland Transportation Co. v. Douglas, 37 Tenn. App. 421, 264 S. W. (2d) 233 (1953). Furthermore in Memphis Development Company counsel relies upon Railroad v. Wyatt, 104 Tenn. 432, 58 S. W. 308, it is said:

"In the progress of the cause the plaintiff below, over the objection of the railroad company, was permitted to show, by the testimony of two witnesses, that, subsequent to the accident, the company made extensive repairs to this platform. This action of the trial Judge is assigned for error. In this there was error. While there has been some difference of opinion on this question, it is now settled, upon what we deem sound reason, and certainly by the overwhelming weight of judicial opinion, that such testimony is incompetent, because the making of such

repairs as would serve to secure the owner against claims for damages for future casualties is not to be construed into an admission of antecedent negligence, and evidence thereof is calculated to divert the jury from the real issue, and create prejudice against the defendant. * * *''

Plaintiffs undertook to introduce a statement to the effect that not only had there been repairs made to the opening in question here involved, but there had been repairs made to other houses built and conveyed by the defendant, Memphis Development Corporation. If such could be admitted there would be no necessity for the defendant in a damage suit to try to guard against the bringing of suits whether there could be any possible recovery or not, and the reasoning is well said and well founded as stated in Railroad Co. v. Wyatt, 104 Tenn. 432, 58 S. W. 308, and quoted above.

Assignments of error Nos. VIII and IX are levelled at the refusal of the Court in disallowing examination by plaintiff of the witnesses E. M. Franks who was introduced by plaintiff and D. P. Estridge, president of Memphis Development Company, relating to their inspection of other homes with which the Development Company had been connected. It is said that this was error. Such assignments of error have no place with respect to the issues here involved.

Assignment of error No. X is levelled at the action of the Court in refusing to charge the jury with respect to plaintiffs' right to punitive damage. It is said that this was error because the Court of Appeals, when this particular case was before it heretofore, had said:

"From the proof in the record there is no question but that the workman who covered the opening on the attic side with loose wooden boards and non-weight-bearing materials flush with the other portion of the attic floor was guilty of gross negligence and in effect created a dangerous trap for any person who might thereafter have occasion to be in the attic for any purpose."

We have stated hereinbefore that when this case was before this Court and when it was before the Supreme Court after the first trial the Trial Judge had directed verdicts favorable to all of the defendants, at the end of the proof of the plaintiffs. Defendants offered no proof whatever at that time. Now there is the proof of the witnesses for the defendant and while we are not concerned with a preponderance of proof, we are only concerned with whether or not there is any material, competent and persuasive evidence to support the verdict of the jury. We are of the opinion that the proof fully supports the verdict of the jury on this trial.

The consequence is that all assignments of error are overruled, the judgments of the lower court in directing a verdict in favor of the defendants, Fogelman & Company and Rogers are affirmed and the verdicts of the jury, together with the judgments thereon in favor of the Memphis Development Company are affirmed, and the costs are taxed to the plaintiffs, it appearing that the original minor plaintiff had arrived at the age of 21 years when she and her mother perfected their appeals in these cases. Judgment will be entered accordingly.

Carney and Bejach, JJ., concur.