ELSIE McQUILLAN AND CHARLES McQUILLAN, PLAIN-
TIFFS, v. CLARK THREAD COMPANY, A CORPORA-
TION, DEFENDANT.

Decided February 13, 1934.

For the motion, *Lindabury, Depue & Faulks* (*Walter F. Waldau,* of counsel).

*Contra, Jack Feinberg.*

OLIPHANT, S. C. C. This matter is before me sitting as a Supreme Court commissioner on a motion to strike the complaint upon the ground that the allegations thereof are sham and upon the further ground that they do not state a good, legal and sufficient cause of action.

The complaint alleges that on October 19th, 1933, and for a long time prior thereto, the defendant was and still is the owner of premises situated on Danforth avenue, in the city of Jersey City, and further alleges that on or about said date, and for a long time prior thereto, the sidewalks were permitted and allowed to be used while they were in a defective and dangerous condition, and that this condition was caused through the carelessness and negligence of the defendant. The complaint further avers that the plaintiff, Elsie McQuillan, while using the sidewalk fell and received injuries.

Attached to the notice of motion to strike was the affidavit of William H. Loftus, vice-president of the defendant, Clark

Thread Company. That affidavit states that the Clark Thread Company on October 14th, 1933, sold and conveyed the premises mentioned in the complaint, the deed being executed and delivered, and possession of the premises delivered on said day. The affidavit further states that the Clark Thread Company has not been in possession or control of the premises since the 14th day of October, 1933.

The facts as stated in the affidavit were admitted by plaintiffs' attorney in the oral argument before me.

At the time the motion to strike the complaint was argued, the plaintiffs asked leave to file an amended complaint in which the present owner and occupier of the premises were joined as defendant and which repeated the count of negligence against the Clark Thread Company, and added a second count sounded in nuisance.

It can be seen that this action is brought against the defendant, who had by warranty deed without reservations conveyed the property five days before the alleged happening of the accident to the plaintiff.

There appears to be no case precisely in point on this question in this state. The leading case in the country, however, appears to be that of *Palmore* v. *Morris* (*Superior Court of Pennsylvania,* 1897), 37 *Atl. Rep.* 995. In that case an action was instituted against the defendant for injuries sustained by a minor which injuries were the result of the defendant's negligence in maintaining a dangerous and badly secured gate on a building adjoining a public sidewalk. The evidence showed that the gate was out of repair and that there was negligence on the part of the one whose duty it was to repair it. The plaintiff was injured while standing on the pavement and looking through this gate into the premises. The day previous to the accident, the defendant had conveyed the property by deed. The lower court submitted the case to the jury and a verdict was rendered for the plaintiff. On appeal this judgment was reversed. Mr. Justice Dean, writing the opinion for the court, said in part:

"But this is not a letting of the land by a landlord to a tenant; it is an absolute sale, whereby the owner devests himself of title, and all right to possession, or of re-entry for

repairs, or for any other purpose. Any future possession in face of his deed, unless there be an independent stipulation to the contrary, would be a palpable trespass; and with his surrender of possession all the duties incident to ownership, as to him, were at an end. From the moment Lodge took possession under his deed the duties theretofore incumbent on Morris, Tasker & Company were transferred to him, and he became answerable to the public for neglect in their performance. The learned judge of the court below adopts a different event for the commencement of liability on the part of the grantee than possession taken under the deed. He says, 'he ought, within a reasonable time, to see that the property which he had purchased, if it was in dangerous condition to the public, was put in repair.' That is, he imports into the deed an implied covenant on part of the grantors that they will be answerable to third parties for defects in the building for a reasonable time after the grantee takes possession. *Public policy does not demand that such clogs on the transfer of real estate should be imposed by construction, nor does the law warrant such an implication. Before he purchased the real estate, the law presumes the grantee examined the property, and was cognizant of its situation, surroundings, the character of the structures upon it, and their condition of repair.* Without an express covenant by the grantors, as between them and the grantee, there was no duty on the grantors to repair. *The purchaser thereafter assumed that duty because he then became the owner and occupant.* If the grantors, after possession by Lodge, the grantee, owed no duty to him, why should there be negligence in performance on their part as to the public? It is not even the case of no actual occupancy, where the law casts the duty on the owner, but one where the owner and actual occupant were the same."

The rule enunciated in the foregoing case was followed and applied in the case of *Smith* v. *Tucker* (*Superior Court of Tennessee,* 1925), 270 *S. W. Rep.* 66.

It, therefore, appears that a cause of action founded upon negligence in regard to real property can be maintained only against the owner occupier, *i. e.,* the one in control. Where there has been a transmutation of title and possession, the

former owner has no control over the premises and he does not have the right of possession nor the right of entry. Any attempt to make entry on his part for whatever purpose would put him in the category of a trespasser. Having divested himself of all rights in regard to the property, he owes no duty with respect to the condition of the premises. Therefore, the negligent condition which may exist on the premises to the injury of any member of the public, whether he be a licensee or invitee, is not actionable as against the former owner.

The same reasoning would apply to the count charging the maintenance of a nuisance, if leave were given to amend the complaint to contain that count.

Counsel for the plaintiff, in support of his contention that the second count would state a good cause of action relies on the case of *East Jersey Water Co.* v. *Bigelow,* 60 *N. J. L.* 201; 38 *Atl. Rep.* 631, but that case can be easily distinguished from the one before me. In that case the East Jersey Water Company reserved to itself by special covenant in the lease the right to maintain the dam and reservoir which created the nuisance and the control and management thereof. It further appeared in that case that the East Jersey Water Company was actually in control of the water works and dam which caused the diversion of water.

There is a distinction between the situation where one constructs or erects a structure or impediment and where one through negligence permits a sidewalk or some building thereon to fall into disrepair and so become defective. This distinction was made by the Court of Errors and Appeals in the case of *McKeown* v. *King,* 99 *N. J. L.* 251; 122 *Atl. Rep.* 753.

Counsel for the plaintiff further contended that a reasonable opportunity must be given the new owner to repair before the liability shifted. The answer to that proposition is that the grantee should have inspected the property and if necessary insisted upon proper repairs before taking title.

It would be a dangerous principle to declare that liability for injuries sustained by reason of negligence or the maintenance of a nuisance continues after transfer of title. How

long would the liability continue?   Where would the line be drawn?

The motion to strike the complaint will be granted and the motion to amend the complaint will be denied.